**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 10-cv-01892-MSK-CBS

**KYLE LEE HOUSTON,**

        Plaintiff,

v.

**JEAN PAGETTE DOC # 93833;
S.C.F. WARDEN MILYARD;
S.C.F. LIEUTENANT PAGE;
S.C.F. LIEUTENANT HARRIS;
S.C.F. MEDICAL BEV DOWIS;
A.V.C.F. WARDEN ARELLANO;
A.V.C.F. MEDICAL MICHELLE NELSON; and
C.M.H.I.P. HOSPITAL DR. HUBERT SERVIS,**

        **Defendants.**

**OPINION AND ORDER GRANTING
MOTION FOR SUMMARY JUDGMENT**

        **THIS MATTER** comes before the Court on Defendants Milyard, Page, Harris, Dowis, Nelson, and Servis's Motion for Summary Judgment **(#126)**. The Plaintiff Kyle Lee Houston, proceeding *pro se*,[1] filed a Response **(#145)**, and the Defendants replied **(#146)**.

---

[1] The Court is mindful of Mr. Houston's *pro se* status, and accordingly, reads his pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, such liberal construction is intended merely to overlook technical formatting errors and other such defects in the Plaintiff's use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not relive the Plaintiff of the duty to comply with various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court will treat the Plaintiff according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

1

## I. Background

Mr. Houston's claims are based on the following facts and allegations. At all relevant times, Mr. Houston was an inmate in the Colorado Department of Corrections (CDOC) prison system. In July 2008, Mr. Houston was housed in Unit 3 at the Sterling Correctional Facility (SCF). Mr. Houston alleges that, at the time, he was working on a legal matter challenging his incarceration and that he had made several complaints, presumably about his incarceration, to Defendant Warden Milyard. He alleges that in response to his complaints, Warden Milyard formulated a "plan" to prevent him from pursuing his legal remedies. Allegedly in furtherance of that plan, Mr. Houston was transferred to Unit 4 where the Prison Trained Dog Program (PTDP) was housed. Defendants Lt. Harris and Lt. Page were in charge of inmates in the PTDP.

Defendant Jean Pagette was an inmate in Unit 4 and was part of the PTDP. Mr. Pagette was in charge of a dog named Darwin, a former police dog. Mr. Houston alleges that Darwin had been trained as a companion dog through PTDP, but was returned to PTDP because of his "vicious tendencies." Mr. Houston alleges that Lt. Harris and Lt. Page both knew of Darwin's tendencies. On August 25, 2008, Mr. Pagette encountered Darwin while he was in a pod working on his legal matters. The particulars of the encounter are disputed, but according to Mr. Houston, Mr. Pagette, allegedly at the direction of Warden Milyard, Lt. Page, and Lt. Harris, ordered Darwin to attack him. Mr. Houston suffered injuries to his forearm and abdomen.

Mr. Houston was taken to the medical clinic after the attack, where he was treated by nurses. According to Mr. Houston, the dog bite wound on his abdomen aggravated an old hernia and required surgery. He alleges that Defendant Dowis, the medical director at SCF, knew that he needed surgery, but refused to make the necessary referral. Mr. Houston alleges that when he

continued to complain, Ms. Dowis and Warden Milyard had him transferred to Arkansas Valley Correctional Facility (AVCF). The transfer occurred around September 2, 2008.

Mr. Houston alleges that while at AVCF, Defendant Michelle Nelson, the Health Services Administrator, knew of his medical needs but did not address them until October 2008. He was then sent for an evaluation by Defendant Dr. Servis, who recommended surgery. Mr. Houston did not immediately receive the surgical treatment. Mr. Houston was then transferred to the Fort Lyons Correctional Facility (FLCF), allegedly at the direction of Defendant Warden Arellano and for the purpose of denying him medical treatment. On January 19, 2009, Dr. Servis performed surgery on Mr. Houston. Mr. Houston alleges that Dr. Servis performed a "lesser surgery" than was necessary, which resulted in an exacerbation of his condition.

When Mr. Houston continued to complain about his injuries after surgery, Ms. Nelson (who also had been transferred to FLCF) and Warden Arellano transferred him to San Carlos Correctional Facility (SCCF) and caused him to be treated with psychotropic drugs, both of which were done without a hearing. He was transferred to SCCF without a hearing. According to Mr. Houston, he was given psychotropic drug at SCCF for the purpose of interfering with his ability to pursue his legal matters. Mr. Houston remained at SCCF until he was released from custody on October 4, 2010.

The Court understands Mr. Houston to assert the following claims pursuant to 42 U.S.C. § 1983: (1) violation of his Eighth Amendment right to be free from cruel and unusual punishment against Defendants Pagette, Milyard, Harris, and Page for their actions related to the dog bite incident; (2) deliberate indifference of his medical needs in violation of the Eighth Amendment against Defendants Milyard, Dowis, Nelson, Servis, and Arellano for denying him treatment of his injuries; (3) denial of his right to access the courts in violation of the First and

Fourteenth Amendments against all Defendants for their "interference" with his "right to petition for redress of his grievances"; and (4) violation of procedural due process under the Fifth and Fourteenth Amendment against Defendants Nelson and Arellano for giving him psychotrophic drugs and transferring him to SCCF without a hearing.  Mr. Houston seeks damages.

Defendants Milyard, Harris, Page, Dowis, Servis, and Nelson move for summary judgment in their favor on all claims.  They assert the defense of qualified immunity and argue that they are entitled to judgment as a matter of law pursuant to Fed. R. Civ. P. 56.

## II.  Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Substantive law governs what facts are material and what issues must be determined.  It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof.  *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party.  *See Anderson*, 477 U.S. at 248.  When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### III. Analysis

In an action under § 1983, the doctrine of qualified immunity protects individual state actors from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant asserts a qualified immunity defense at the summary judgment stage, the burden shifts to the plaintiff to show that (1) the defendant violated a constitutional or statutory right, and (2) the constitutional or statutory right was clearly established when the alleged violation occurred. *See Verdecia v. Adams*, 327 F.3d 1171, 1174

(10th Cir. 2003). Even though the plaintiff bears the burden of making this two-part showing, the Court construes the facts in the light most favorable to the plaintiff as the nonmoving party. *See Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012). Only if the plaintiff meets his burden under the qualified immunity analysis does the defendant bear the traditional burden of a movant on summary judgment. *See Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008).

The Court proceeds on the first prong of the qualified immunity analysis in determining whether Mr. Houston can establish a constitutional violation. It will address the "clearly established" question only if Mr. Houston carries his burden on the first prong.

### A. Cruel and Unusual Punishment

Mr. Houston alleges that Defendants Milyard, Harris, and Page violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to protect him against the attack by Darwin. To establish a cognizable Eighth Amendment claim for failure to protect an inmate from harm, the plaintiff must show that (1) he is incarcerated under conditions posing a substantial risk of serious harm, the objective component, and (2) the defendant was deliberately indifferent to his safety, the subjective component. *Smith v. Cummings*, 445 F.3d 1254, 1258 (10th Cir. 2006). Mere negligence does not constitute deliberate indifference. Deliberate indifference is equivalent to recklessness in this context. *Id.*

Defendants Milyard, Harris, and Page assert that Mr. Houston cannot prove that they were deliberately indifferent to his safety. The Court agrees. Mr. Houston has failed to establish both the objective and subjective elements of this claim. First, he has not provided any competent evidence that he was incarcerated under conditions posing a substantial risk of harm. He makes the conclusory allegation that Darwin had "vicious tendencies," but has not provided any evidence to support that allegation. Further, Mr. Houston fails to explain how Darwin's

purportedly vicious tendencies created unsafe living conditions.  Mr. Houston does not allege that he was forced to endure regular, extended encounters with Darwin.  Second, Mr. Houston has not provided any competent evidence to establish that the Defendants were deliberately indifferent to his safety.  Mr. Houston makes the conclusory allegation that the Defendants knew that Darwin was vicious and that they nevertheless allowed him to be an in area where Mr. Houston could be injured.  But Mr. Houston does not provide any evidence to support that allegation.  Accordingly, the Court finds that Mr. Houston has failed to establish that Defendants Milyard, Harris, and Page violated his constitutional right to be free from cruel and unusual punishment under the Eighth Amendment.

### B.  Deliberate Indifference to Medical Care

Mr. Houston alleges that Defendants Milyard, Dowis, Nelson, and Servis were deliberately indifferent to his medical needs by failing to provide prompt and necessary medical care for injuries he sustained after the dog bite.  To prove a claim of deliberate indifference to medical care in violation of the Eighth Amendment, a plaintiff must prove that (1) objectively, he was deprived of a "sufficiently serious" medical need, and (2) subjectively, that the defendant knew of and disregarded an excessive risk to the inmate's health or safety.  *See Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).

The Defendants allege that Mr. Houston cannot establish that they were deliberately indifferent to a serious medical need.  Again, the Court agrees.  With regard to the objective element, a medical need is considered "sufficiently serious" if the condition has been "diagnosed by a physician as mandating treatment" or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Oxendine v. Kaplan*, 241 F.3d 1271, 1276 (10th Cir. 2001).  Here, the record shows that Mr. Houston was promptly treated for injuries to his left

forearm and abdomen as a result of the August 25, 2008 dog bite and was regularly seen for follow-up visits concerning the dog bite. During the follow-up visits, Mr. Houston began to complain of pain in his abdomen. The record shows that Mr. Houston's complaints were addressed through the prescription of pain medication and prompt request of an ultrasound and CAT scan. The CAT scan was performed on October 14, 2008, and revealed a "probable area of cellulitis." Once that diagnosis was made, a call was immediately placed to Dr. Servis for a surgical evaluation. On October 21, 2008, Dr. Servis evaluated Mr. Houston and observed a mass in Mr. Houston's abdomen. Dr. Servis's diagnosis was that the mass was a hematoma that could possibly be excised with surgery, but that was not related to any serious, debilitating condition. Because Mr. Houston continued to complain of pain, Dr. Servis agreed to perform surgery. Mr. Houston was scheduled for and underwent surgery in 2009. Thus, Mr. Houston received treatment for the diagnosis made by Dr. Servis.

Mr. Houston complains that he did not receive the surgery until January 2009. Delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm. *See Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993). Mr. Houston states that he experienced pain during the delay. The record shows, however, that this surgery was "elective," as Dr. Servis did not believe that his condition mandated emergency treatment. Mr. Houston has not shown that he experienced "substantial harm" during the time that was waiting to undergo an elective surgery.

Even assuming that Mr. Houston could establish that he was deprived of a sufficiently serious medical need, he has failed to establish that the Defendants knew of and disregarded an excessive risk to his health. Despite Mr. Houston's allegations to the contrary, the record shows that the Defendants were not immediately aware that Mr. Houston had a medical condition that

could be treated with surgery.  The option for surgery did not become apparent until the results of the CAT scan were obtained and an evaluation was performed by Dr. Servis.  Further, the record shows that the condition did not pose an excessive risk to Mr. Houston's health.  The diagnosis given by Dr. Servis was that the mass in Mr. Houston's abdomen was a hematoma that was not life-threatening or debilitating.  Dr. Servis did not disregard Mr. Houston's condition, but rather agreed to treat him with surgery because of his complaints of pain.

Mr. Houston alleges that Dr. Servis performed a "lesser surgery" and that the surgery exacerbated his condition and caused further pain.  However, a disagreement over choice of treatment or mere negligence in diagnosing and treating a medical condition does not amount to deliberate indifference.  *See Sealock*, 218 F.3d at 1211; *Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006).  Here, the record does not support a finding of deliberate indifference by Defendants Milyard, Dowis, Nelson, or Servis.  The Court therefore finds that Mr. Houston has not established a constitutional violation for deliberate indifference to his medical needs.

### C. Denial of Access to Courts

To establish a violation of his constitutional right to access the courts, a plaintiff must show that (1) the defendant failed to assist him in preparing and filing meaningful legal papers by providing him an adequate law library or adequate assistance from persons trained in the law, and (2) some quantum of prejudice or detriment caused by the defendant's conduct resulting in the interruption and/or delay of his pending or contemplated litigation.  *See Lewis v. Casey*, 518 U.S. 343, 346 (1996).

As to this claim, Mr. Houston generally asserts that during the relevant time period he was working on "legal matters."  He then makes the conclusory allegation that the Defendants acted in furtherance of a "plan" to interfere with his ability to work on these matters.  Assuming

that Mr. Houston could prove these allegations, of which the Court has considerable doubt, Mr. Houston does not explain or demonstrate what injury or prejudice he has suffered as a result of the Defendants' alleged actions. There is no indication that Mr. Houston was working on a pending case or how the Defendants' actions impacted that case. Or, if a case had not yet been initiated, there is no explanation as to how the Defendants' actions prevented Mr. Houston from filing his case. The Court therefore finds that Mr. Houston has failed to establish a violation of his constitutional right to access the courts.

### D. Procedural Due Process

Mr. Houston's procedural due process claim is premised on his allegation that Defendants Nelson, the Health Services Administrator at FLCF, (along with Defendant Arellano, who is not a party to this motion) caused him to be involuntarily transferred to SCCF and to be given involuntary psychotropic drugs without a hearing. To establish a violation of procedural due process, a plaintiff must show that (1) he possesses a protected interest such that due process protections were applicable, and if so, (2) that he was not afforded the appropriate level of process. *See Brown v. Montoya*, 662 F.3d 1152, 1167 (10th Cir. 2011).

Certainly, Mr. Houston has a protected liberty interest in avoiding the unwanted administration of psychotropic drugs under the Due Process Clause of the Fourteenth Amendment. *See Washington v. Harper*, 494 U.S. 210, 221 (1990). However, due process permits the state to treat an inmate who has a serious mental health illness with psychotropic drugs if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest. *Id.* at 227. Where the decision to treat is made, due process requires that the inmate is given notice, a hearing, and an opportunity to be heard with regard to the decision. *Id.* at 235.

Mr. Houston's only complaint is that he did not receive a hearing before being treated with psychotropic drugs. The record belies his assertion. Rather, the record shows that on May 15, 2009, in accordance with CDOC administrative procedures, Mr. Houston received notice of an involuntary mediation hearing to take place on May 18, 2009. The notice provided the tentative diagnosis on which the decision to treat him was based (schizophrenia, antisocial personality disorder), the basis for the diagnosis, and the reasons why medical staff believed medication was necessary. The notice also informed Mr. Houston of, *inter alia*, his right to attend the hearing, to present evidence and witnesses, to cross-examine witness, and to have a representative present on his behalf. The record further shows that the hearing was held on May 18, 2009, at which Mr. Houston was present. Thus, on this record, the Court finds Mr. Houston has failed to establish that he was denied procedural before the involuntary administration of psychotropic drugs.

With regard to the involuntary transfer to SCCF, the Constitution provides an inmate the protection of due process against an involuntary transfer from the prison population to a mental hospital for psychiatric treatment. *Vitek v. Jones*, 445 U.S. 480 (1980); *see also Shriner v Rohlings*, 286 Fed.Appx. 564, 566 (10th Cir. 2008). This liberty interest has been recognized irrespective of any state regulation because it is "qualitatively different" from the punishment characteristically suffered by a person convicted of a crime and because it has "stigmatizing consequences." *See Sandin v. Conner*, 515 U.S. 472, 479 n.4 (1995).

Mr. Houston alleges that did not receive a hearing before he was involuntarily transferred from FLCF to SCCF. However, he makes only the conclusory allegation that Defendant Nelson "caused" him to be transferred. Mr. Houston has not explained, and it is not clear to the Court, how Defendant Nelson, as the Health Services Administrator, was personally responsible for the

11

adequate provision of procedural safeguards prior to such transfer.  Thus, assuming that he was entitled to a hearing and did not receive one, the Court finds that Mr. Houston has not established that Defendant Nelson was responsible for such deprivation.  In order for liability to arise under § 1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established.  *See Trukillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006).

Because Mr. Houston has failed to demonstrate that Defendants Milyard, Page, Harris, Dowis, Nelson, or Servis committed any constitutional violation, the Court does not address the "clearly established" prong of the two-step qualified immunity analysis and concludes that these Defendants are entitled to qualified immunity.

## IV.  Conclusion

For the forgoing reasons, Defendants Milyard, Page, Harris, Dowis, Nelson, and Servis's Motion for Summary Judgment **(#126)** is **GRANTED**.  The Clerk is directed to enter judgement in favor of Defendants Milyard, Page, Harris, Dowis, Nelson, and Servis on all claims asserted against them.  The only claims remaining in this case are claims asserted against Jean Pagette and Warden Arellano.

Dated this 30th day of March, 2015.

                **BY THE COURT:**

                *Marcia S. Krieger*
                _____

                Marcia S. Krieger
                Chief United States District Judge